COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-361-CR

KHALED MOHAMMAD QADDURA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Khaled Mohammad “Kevin” Qaddura of  cruelty to an animal, and the trial court sentenced him to 180 days’ confinement in the Parker County Jail and a fine of $4,000.  Appellant brings two points on appeal, challenging the legal and factual sufficiency of the evidence to support his guilt.  Because we hold that the evidence is both legally and factually sufficient, we affirm the trial court’s judgment.

Appellant was charged with the offense of cruelty to animals by information on grounds that he had intentionally or knowingly failed unreasonably to provide necessary food for one or more goats in his custody, had intentionally or knowingly abandoned unreasonably the goat or goats, and had intentionally or knowingly confined the goat or goats in a cruel manner.
(footnote: 2)  Section 42.09 of the Texas Penal Code provides in pertinent part that

(a) A person commits an offense if the person intentionally or knowingly:

. . . .

(2) fails unreasonably to provide necessary food, care, or shelter for an animal in the person’s custody;

(3) abandons unreasonably an animal in the person’s custody;

(4) transports or confines an animal in a cruel manner;

. . . .

(c) For purposes of this section:

(1) “Abandon” includes abandoning an animal in the person’s custody without making reasonable arrangements for assumption of custody by another person.

(2) “Animal” means a domesticated living creature and wild living creature previously captured. “Animal” does not include an uncaptured wild creature or a wild creature whose capture was accomplished by conduct at issue under this section.

(3) “Cruel manner” includes a manner that causes or permits unjustified or unwarranted pain or suffering.

(4) “Custody” includes responsibility for the health, safety, and welfare of an animal subject to the person’s care and control, regardless of ownership of the animal.

(5) “Necessary food, care, or shelter” includes food, care, or shelter provided to the extent required to maintain the animal in a state of good health.
(footnote: 3)

Appellant operated Halal Slaughterhouse, a meat processing plant in Weatherford, Texas.  On July 20, 2004, Weatherford Police Officer Ronnie Corder was dispatched to the slaughterhouse to investigate a complaint of a foul odor coming from the property.  Corder testified at trial that upon arriving at the property, he found multiple dead sheep and goat carcasses in different stages of decomposition.  He observed a number of live animals, in his estimation over fifty, most of which appeared underweight.  Several of the animals had secretions coming from their noses and  eyes.  Some animals were lying on their sides and could not get up.  Corder testified that a few of the animals looked fairly healthy.

Corder further testified that he found limited water for the animals; the property had three or four automatic watering devices for the animals, but only one was hooked up to a water supply.  Most of the water troughs he observed had no more than an inch of water in them.  One water container appeared to be half full.  The cows in one pen had no water at all.

Corder testified that he also looked for food for the animals and found that none of the automatic feeders to which the animals had access had any food in them.  There were no leaves or foliage that the animals could get to.  Corder found hay in one area, but the hay appeared to him to be dry, black, and moldy, and none of the animals had access to it anyway.  Corder was unable to find anyone else on the property except for a state inspector, so he left.

Corder returned three days later and found Appellant working on the premises.  Corder observed that the conditions on the property were the same as on July 20.  Corder asked Appellant why he had so many dead animals, and Appellant told him that he had bought underweight and sick animals, including sheep and goats, from other slaughterhouses.  Corder advised Appellant that if Appellant wanted to keep animals for longer than twenty-four hours, then he would have to provide them with substantial food and water, and that sick animals kept longer than twenty-four hours would have to be provided with medical care or be euthanized.

Corder returned to the property once again on July 28, 2004, eight days after his first visit and five days after his second visit.  He spoke with Appellant and Robert Kinney.  The animal carcasses had been removed, but otherwise the conditions on the property appeared to be the same as on his prior visits.  Corder testified that he believed that Appellant would continue to make progress toward compliance.

Corder returned to the property almost three weeks later on August 16, 2004, again in response to a complaint of a foul odor.  The animals appeared to be in the same condition as on his previous visits, still with little to no water or food, and again Corder observed dead and decomposing animals.  Appellant was not on the property, and Corder observed a notice taped to the door and a substantial amount of mail in the mailbox.  (The notice was not offered into evidence, and the record does not reflect its content.)  Corder concluded that the property had been abandoned and left to obtain a warrant to seize the animals based on the offense of cruelty to animals.  He returned the next day with other city officials and seized approximately ninety-three animals.  Corder testified that he saw no evidence that the animals had been fed since the previous day.  Some of the animals had to be carried to the trailer because they could not walk.

Kinney testified that Appellant had been on vacation on both August 16 and August 17, 2004, and that Kinney had agreed to feed and water the animals while Appellant was away in exchange for Appellant’s allowing him to park his mobile home on the property.  Kinney further testified that he fed the animals hay and gave them water every day, that the animals had plenty of hay and water, and that one of the feeders had grain in it.

The evidence is uncontroverted that Appellant made arrangements for his tenant, Kinney, to feed and water the animals while he was gone a month or more.  The evidence is also uncontroverted that the only thing Appellant left for Kinney to feed the animals was moldy hay.  When a grain delivery was attempted, no one was present to receive the grain, so the truck driver left without delivering the grain.  No grain was delivered after April.  The evidence is also uncontroverted that the water troughs contained little if any water. Kinney claimed that there was some grain in one of the feeders, but Corder testified to the contrary.  Kinney never testified that he fed the animals grain, and Corder testified that the only feed he saw on the premises was the old moldy hay.  Corder testified that on his last visit, the animals appeared to be in the same condition as on his previous visits, still with little to no water or food, and again Corder observed dead and decomposing animals.  The evidence also reflects that Corder had warned Appellant at least twice that the animals were in danger and that he had to take better care of them.  The condition of the goats and other animals was as dismal when Appellant was present as when he was absent.

Essentially, the trial was a swearing match between the State’s witnesses and Appellant’s witnesses. Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”
(footnote: 4)  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”
(footnote: 5)
 Additionally, although Appellant could argue that the evidence does not reflect that his intent was to abuse, mistreat, and starve the animals in his care, when Appellant left town, he left the animals, including goats, in Kinney’s care, but he left inadequate food to sustain the goats’ lives.  When Kinney called around August 16 to tell Appellant that the animals were dying, Appellant told him to give the animals more hay, even though he was aware that the hay was old and moldy.  No feed had been delivered since April, yet Appellant did not instruct Kinney to order feed, and Appellant made no effort to secure feed.  The animals, including the goats, were enclosed in small spaces devoid of grass and foliage, with little or no water, little or no grain, and no fresh hay. The record is replete with photographs of dead or dying animals, little more than skeletons, either in crowded pens or in larger enclosures with neither grass nor hay nor feed and little or no water.  Thus, the jury could reasonably have concluded that Appellant intentionally, or at least knowingly, failed unreasonably to provide necessary food, care, or shelter for an animal in his custody.
(footnote: 6)  Without objection, the jury returned a general verdict rather than a separate verdict for each allegation submitted to it.

Applying the appropriate standards of review,
(footnote: 7) we hold that the evidence is both legally and factually sufficient to support the jury’s verdict.  We therefore overrule Appellant’s two points and affirm the trial court’s judgment.  

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 1, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Penal Code Ann.
 § 42.09 (Vernon Supp. 2006).

3:
Id
.

4:
Johnson v. State
, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

5:
Id
. at 9.

6:
See
 
Tex. Penal Code Ann.
 § 42.09(a)(2).

7:
See Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005) (both providing legal sufficiency standard of review); 
Watson v. State
, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Johnson
, 23 S.W.3d at 8-9, 11-12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review).